Mary L. CLARK, Plaintiff–Appellant,

v.

Marvin T. RUNYON, Jr., Postmaster General, United States Postal Service, Defendant–Appellee.

No. 96–2723.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1997.

Decided June 19, 1997.

Nile J. Williamson (argued), Peoria, IL, for plaintiff–appellant.

David H. Hoff (argued), Office of the United States Attorney, Urbana, IL, Mary J. Dolan, United States Postal Service, Law Department, Chicago, IL, for defendant–appellee.

Before POSNER, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

On December 1, 1993, Mary Clark resigned her position as a mailing require-

ments clerk for the United States Postal Service. She had worked for the Postal Service primarily at the main post office in Decatur, Illinois since August 1985. Clark alleges that she was forced to resign to escape workplace harassment springing from two high-risk pregnancies[1] that she experienced during her tenure with the Postal Service. R. 1 at 2. She did not contact an EEO officer, however, until August 12, 1994, more than eight months after she resigned. After receiving a right-to-sue letter, she filed this sex-discrimination suit under Title VII.

The Postmaster General sought dismissal of the suit based on Clark's failure to contact an EEO counselor within the forty-five day period prescribed by 29 C.F.R. § 1614.105(a)(1). This requirement is not jurisdictional (e.g., Johnson v. Runyon, 47 F.3d 911, 917 (7th Cir.1995)), and the regulation itself provides for tolling when the employee demonstrates that she was not on notice of the time limit or that despite her due diligence circumstances beyond her control prevented her from contacting a counselor within forty-five days. 29 C.F.R. § 1614.105(a)(2). Invoking that provision, Clark, alleged that she had no notice of the time limit because the notices required by 29 C.F.R. § 1614.102(b)(6) were not posted in the Decatur main post office[2] and, alternatively that her pregnancy, the difficulties associated with it, and the premature birth of her twin daughters in May 1994 collectively prevented her from contacting an EEO counselor earlier than she did. The parties consented to have the Magistrate Judge decide this question.

After an exhaustive two-day bench hearing, Magistrate Judge Bernthal concluded that Clark's complaint should be dismissed for the failure to timely contact an EEO counselor. It was Clark's contention that posters giving notice of the forty-five day time limit had not been visibly displayed at the main post office during the pertinent time period preceding her departure. In that vein, she and several other postal employees (including her husband, Kevin Clark, Karen Tertocha, Rick Sloan, Connie Shively, Vicki Reynolds, and Rodney Harrell) testified essentially that they had not seen such posters displayed in the Decatur main post office prior to August 1994, when Clark finally contacted a counselor.[3] But according to Marvin Pellett, the postmaster at the Decatur main post office until April 1996, posters informing employees of the time limit were displayed at seven locations in that post office from December 1991 through May of 1993, when Pellett delegated responsibility for the posters to employee Larry Mudd. That change occurred after EEO counselor Valeria Sanders visited the main post office on May 20, 1993. Saunders testified that in performing a spot check of the posters displayed there, she noticed that all were outdated. She replaced two herself and left additional, updated posters for the office staff to put up. Mudd testified that he had fellow employee Carl Rowland post them after meeting with Pellett and employee Eileen

---

1. Clark gave birth to her son Andrew in May 1993. Her twin daughters, Rachel and Sarah, were born approximately one year later. During both pregnancies, Clark experienced migraine headaches and nausea that on occasion caused her to miss work. Apparently it was these absences, in part, which triggered the harassment of which she complains. See R. 1 Ex. 2.

2. The regulation requires federal agencies to "[p]ublicize to all employees and post at all times the names, business telephone numbers and business addresses of the EEO Counselors ..., a notice of the time limits and necessity of contacting a Counselor before filing a complaint and the telephone numbers and addresses of the EEO Director, EEO Officer(s) and Special Emphasis Program Managers." 29 C.F.R. § 1614.102(b)(6).

3. Testimony to the effect that Clark and her coworkers "did not see" the EEO notices is not by itself sufficient to establish that the notices were not, in fact, posted. See Posey v. Skyline Corp., 702 F.2d 102, 105–06 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); Vaught v. R.R. Donnelley & Sons Co., 745 F.2d 407, 412 (7th Cir.1984); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1210–11 (7th Cir.1993). A number of Clark's witnesses acknowledged that they had not specifically looked to see whether the notices were posted prior to December 1, 1993 and/or conceded that it was possible the notices were there. E.g., Tr. 57 (Karen Tertocha), 66 (Rick Sloan), 76 (Connie Shively), 87–88 (Vicki Reynolds), 130–36, 141–42 (Mary Clark); but see Tr. 95 (Rodney Harrell) (no EEO notice was posted in May 1993).

McQuality to discuss appropriate locations. Rowland confirmed in testimony that he had, in fact, posted them. Pellett then wrote a letter to Sanders (which Sanders testified she received) indicating that the new posters had been displayed in the seven locations he listed therein. Mudd testified that he routinely checked through January 1994 to make sure those posters remained visibly displayed. Employee Jack Nichols, who in the autumn of 1993 was president of the local postal workers union, testified that he had seen the notices in the basement of the post office and at one location on the main floor between 1991 or 1992 and January 1994.

Having heard the conflicting testimony as to the posters, Judge Bernthal credited the Postmaster General's witnesses on this point:

> The Court has listened to the testimony, considered the inconsistencies, carefully observed the witnesses while testifying, and compared the testimony of the various witnesses with the other witnesses and concludes that Plaintiff failed to meet her burden of proof. The Court finds that from at least May 1993 through the end of Plaintiff's period of employment, notices in the form and content depicted in Defendant's Exhibit No. 1 were posted in several places throughout the main Post Office in Decatur, Illinois. Valeri[a] Sanders discovered that the posters (Defendant's Exhibit No. 1) that had been sent to the Decatur Post Office for display had not, as of her May 1993 visit, been displayed. She called that to the attention of Mr. Mudd and personally posted two of the notices and left two additional notices. Marvin Pellett, the Postmaster in Decatur in 1993, directed that additional copies of the poster be placed throughout the building. Carl Dean Rowland, custodian at the main Post Office in Decatur, was directed to display the posters and monitor them regularly. The Court finds that the posters were placed in May of 1993 and remained thereafter.

Memorandum Decision at 3. The judge went on to find that the notices were displayed in locations where postal employees worked and by which they regularly passed, and that the contents of the notices were reasonably geared to inform employees like Clark of their rights, how to enforce those rights, whom to contact, and the time within which employees must act. *Id.* at 4; *see Johnson,* 47 F.3d at 918–19.

Judge Bernthal likewise found no circumstance that prevented Clark from acting within the forty-five day limit. Although he agreed that Clark's difficult pregnancy rendered her situation "far from ideal" (*id.* at 6), and he rejected the notion that she had to be virtually incapacitated for the time limit to be tolled (*id.* at 5), he found nonetheless that Clark remained able to act within the forty-five day period (*id.* at 6). "The condition did not render her so weak or frail that she could not have placed telephone calls, written letters, received visitors, or even left the home for meetings." *Id.* To toll the limitation period under these circumstances, the judge reasoned, "would amount to judicial nullification of the 45 day limit." *Id.*

■ We have reviewed the record and find no basis to disturb the lower court's judgment. Typically we review a district court's decision whether to equitably toll a limitations period for abuse of discretion. *See Lever v. Northwestern Univ.,* 979 F.2d 552, 556 (7th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993); *EEOC v. O'Grady,* 857 F.2d 383, 394 (7th Cir.1988); *see also EEOC v. Kentucky State Police Dep't,* 80 F.3d 1086, 1094 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 385, 136 L.Ed.2d 302 (1996); *Dixon v. Shalala,* 54 F.3d 1019, 1031 (2d Cir.1995); *Doherty v. Teamsters Pension Trust Fund of Philadelphia & Vicinity,* 16 F.3d 1386, 1389 (3d Cir.1994); *but see Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1531 (11th Cir.1992) (*de novo* review). Deferential review is particularly appropriate here, where the district court made the tolling decision after a full evidentiary hearing and where both of the tolling issues that Clark has raised on appeal are highly dependent on the facts as the court found them to be. *Cf. Stark v. Dynascan Corp.,* 902 F.2d 549, 551 (7th Cir.1990) (equitable tolling decision made on summary judgment reviewed *de novo*).

■ Clark's challenge to the court's finding as to the display of notices is patently frivolous. She maintains that "the trial court simply nullified the testimony of all seven of plaintiff's witnesses who stated that there was not one visible EEO poster in the Decatur main facility in 1993 by not making any reference whatsoever to these witnesses in the Memorandum Decision." Clark Br. 11–12. It is clear from even a cursory examination of the court's decision, however, that the magistrate judge recognized the conflicting testimony and, based on his observation of the witnesses and consideration of the entire body of evidence before him, chose to credit the Postmaster's evidence. *See* Memorandum Decision at 3, quoted *supra* at 276–77. That he did not explain his reasons for doing so, as Clark stresses (Clark Br. 12) is not dispositive. There can be no question that Judge Bernthal considered everything before him and simply found the Postmaster's witnesses more credible. Absent some suggestion that these witnesses could not be believed (*see Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985)), his credibility determination is not for us to disturb. *E.g., United States v. House*, 110 F.3d 1281, 1286 (7th Cir.1997) ("arguments which simply urge a reassessment of a district court's credibility determination are 'wasted on an appellate court' ") (quoting *United States v. Molinaro*, 877 F.2d 1341, 1347 (7th Cir.1989)); *McMahon Food Corp. v. Burger Dairy Co.*, 103 F.3d 1307, 1313–14 (7th Cir.1996) ("[w]e give [s]pecial deference ... to [a trial court's] findings based on credibility determinations, which can virtually never be clear error") (internal quotation marks and citations omitted).

■ We likewise discern no error in the court's determination that Clark's medical condition in the months following her resignation did not prevent her from contacting an EEO counselor within the prescribed forty-five days. Complications arose from Clark's pregnancy which required her to closely monitor her weight and imposed some restrictions on her activities. She took Tylenol 3 with codeine for the recurrent migraine headaches associated with her pregnancy (which made her drowsy) and another medi- cation to combat nausea. From the thirtieth through the thirty-second week of her pregnancy, Clark was hospitalized and confined to bed, and she ultimately gave birth to her twins prematurely in mid-May. Both of the infants required intensive care thereafter and were not released from the hospital until the end of June 1994. We can readily appreciate that it would have been extremely difficult for Clark to seek out assistance and to pursue her claim in the weeks immediately preceding and following the birth of her twin daughters. But Clark had resigned from the Postal Service—purportedly because of the harassment she alleges—months before that, in early December, 1993. Accepting the finding that appropriate notices had been posted throughout the Decatur facility since at least May, 1993, Clark was on notice of her rights and the procedures for enforcing them prior to her departure, as the magistrate judge pointed out. Memorandum Decision at 4–5. Thus, even if Clark could not have taken action in April, May, and June, 1994, the question remains whether she could have contacted a counselor in the forty-five days immediately after her departure. Clark had, in fact, filed a grievance concerning the harassment with her union in September or October 1993; she learned in January that the union would not pursue that grievance because she was longer in the Postal Service's employ. Within a month of her resignation, she had also filed a claim for unemployment compensation. So she had taken some action within that period, and presumably could have taken further steps to pursue her claim of discrimination. Whatever restrictions Clark's pregnancy and medications may have imposed on her activity, the record does not reveal the limitations to have been so severe that she could not reasonably have pursued her claim within the time prescribed. Clark conceded that she made telephone calls and was able to leave her home at least sporadically (Tr. 137–38); indeed, she acknowledged in her deposition having visited the main post office in December 1993 after her resignation (*see* Tr. 399–400). In fact, Pellett testified that he saw Clark leaving the swing room of the facility toward the end of January 1994. It is difficult to be-

lieve, in view of this evidence, that Clark could not at the very least have contacted an EEO counselor by telephone in December or January.[4] Clark's husband, of course, remained employed at the Decatur main post office and could have lent her a hand. And Clark, beyond summarily invoking her condition as well as the stress associated with the harassment of which she complains (*see* Clark Br. 18), offers us no reason to question the lower court's facially reasonable conclusion that if she remained able to leave the house, visit the post office, and make telephone calls, she could have contacted an EEO counselor much sooner than she did.

We therefore affirm the district court's judgment. The perfunctory and largely frivolous character of this appeal has caused us to consider an award of sanctions pursuant to Circuit Rule 38. Appellants challenging the district court's credibility determinations face an exceedingly difficult burden, as we have noted. *Supra* at 277–78. Yet, Clark has done no more than cite one or two discrepancies in Runyon's case which in no way precluded the magistrate judge from crediting the Postmaster's witnesses.[5] Likewise, when challenging a highly factual determination akin to the magistrate judge's finding that despite the limitations accompanying her pregnancy, Clark could have contacted an EEO counselor, an appellant must confront that finding and articulate why it cannot be reconciled with the evidence. Clark has made no more than the most cursory effort to do so. *See, e.g., In re Generes,* 69 F.3d 821, 828 (7th Cir.1995) (sanctions imposed where appellant merely reasserted his version of facts and argued that he, rather than his opponents, should have been believed), *cert. denied,* —— U.S. ——, 117 S.Ct. 81, 136 L.Ed.2d 39 (1996); *Rennie v. Dalton,*

3 F.3d 1100, 1110 (7th Cir.1993) (sanctions imposed where appellant merely restated facts and credibility issues resolved by district court), *cert. denied,* 510 U.S. 1111, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994). We are therefore contemplating what we believe to be a modest sanction of $250 plus costs. Consistent with the terms of Rule 38, we grant Clark and her counsel fourteen days in which to show cause why a sanction should not be imposed or why the amount of the sanctions we are considering is inappropriate. *See In re Bero,* 110 F.3d 462, 466–67 (7th Cir.1997).

AFFIRMED.

---

4. Given that the EEO personnel for the Central District of Illinois were stationed in Springfield and South Suburban Chicago (*see* Tr. 288–89; Defense Ex. 1), Clark likely would have had to contact a counselor by telephone or by letter in the first instance even if she had not had any limitations on her ability to leave her home.

5. For example, Clark questions why, if Pellett really was checking regularly to see whether the EEO notices remained posted, as he testified, he did not notice that the posters had become outdated as Sanders eventually discovered. Clark

Br. 12. Yet it is plausible to think that Pellett might have performed his inspections without thinking about the accuracy of the posted notices. And in any case, what the magistrate judge emphasized was that the notices were posted *at least* by the end of May 1993 (six months prior to Clark's resignation), when Sanders' visit prompted Pellett to ask Mudd to make sure that updated notices were posted in appropriate locations throughout the facility. Memorandum Decision at 3.