James F. SANTA MARIA, Plaintiff–Appellee,

v.

PACIFIC BELL, Defendant–Appellant.

No. 98–16437.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1999.

Decided Jan. 25, 2000.

Jim D. Newman, Pacific Telesis Group, San Francisco, California, for the defendant-appellant.

William A. Wineberg, Wineberg, Simmonds & Narita, San Francisco, California, for the plaintiff-appellee.

Before: FLETCHER and SILVERMAN, Circuit Judges, and STAGG,[1] District Judge.

SILVERMAN, Circuit Judge:

■ This disability discrimination case concerns the circumstances under which equitable estoppel or equitable tolling will excuse the failure to file a timely EEOC charge. We hold that a plaintiff's reasonable reliance on fraudulent concealment is required for application of the doctrine of equitable estoppel. We also hold that equitable tolling will not excuse the untimely filing of an EEOC charge by a plaintiff who, within the time limit, knew or should have known of the existence of a possible disability discrimination claim.

## I. Facts

### A. Santa Maria's Employment with Pacific Bell

James F. Santa Maria was hired by Pacific Bell ("PacBell") in 1980 as an installation supervisor. Eventually, he became an assistant project manager in one of PacBell's technology support organizations, and was responsible for developing computer applications to enhance customer service. In 1994, believing that Santa Maria's job performance had become unsatisfactory, Santa Maria's then-supervisor placed him on an intensive "coaching program." When Santa Maria's work improved, he was taken off the coaching program.

Sometime thereafter, Santa Maria made what PacBell considered to be two serious on-the-job errors, one of which delayed a product launch. About three weeks later, the situation came to a head when Santa Maria informed his PacBell supervisors that he had completed certain systems work. When other managers tested the application, however, they found that the program had not been correctly implemented, and customers were not able to access the program properly. On January 6, 1995, JoAnne Penrith, the head of Santa Maria's department, informed Santa Maria that she was recommending his termination from employment for poor performance. Penrith sent Santa Maria home with pay pending approval of her recommendation.

Santa Maria immediately contacted PacBell's Employment Assistance Program complaining of stress caused by his threatened termination. Santa Maria was referred to Dr. Gregory Larson, an outside psychologist, who made a diagnosis of major depression. Dr. Paul Hersch, a psychologist in PacBell's medical department, agreed with Dr. Larson's diagnosis. Both Doctors Larson and Hersch concluded that Santa Maria's depression temporarily disabled him from working. Santa Maria was granted benefits under PacBell's short term disability benefits program from January 9, 1995 through August 11, 1995, during which time he was off work.

While on disability leave, Santa Maria met with his own treating doctors—his psychologist, Dr. Larson, and his psychiatrist, Dr. John Baker—as well as with Dr. Hersch. Doctors Hersch and Larson agreed that Santa Maria could return to work in early August if he were eased back on a half-time schedule the first week. After the first week, there were no restrictions placed on Santa Maria's work schedule. Santa Maria returned to work on August 11, 1995. Upon his return, Santa Maria was placed on a 30-day written improvement program containing specific goals and deadlines. Santa Maria was informed on his first day back that if he failed to meet the objectives of the improvement program, he would be terminated from employment with PacBell.

Shortly after Santa Maria's return from disability leave, Dr. Larson called Beth

1. The Honorable Tom Stagg, Senior United States District Court Judge for the Western District of Louisiana, sitting by designation.

Knueven, the disability nurse at PacBell, to inform her that he believed Santa Maria was being treated unfairly and that the strict time pressures of his program were inappropriate given Santa Maria's mental health. On September 14, 1995, Santa Maria informed John Bianchi, a senior supervisor, that he did not feel he was ready to come back to work and face the pressures of the 30-day improvement program. Santa Maria said that he thought his medication was slowing him down, and that he "may be ready to come back and try and manage things with a little less pressure but not a 30 day program." Bianchi advised Santa Maria to consult his doctors, because it was Bianchi's understanding that Santa Maria was to have returned to work without restrictions.

That same day, Dr. Larson wrote the following letter to Nurse Knueven on Santa Maria's behalf:

It is my understanding that on the day of his return to work, Mr. Santa Maria was confronted with an ultimatum; a written contract that he had 30 days to fully complete a specific, complex project, and if he did not meet this criteria he would be terminated.

These are not the conditions under which I and Dr. Baker were releasing Mr. Santa Maria to work. These conditions are not medically appropriate for Mr. Santa Maria's return to work and rehabilitation. Further, I do not believe they comply with the laws governing disabilities in the work place.

\* \* \* \* \* \*

The managers involved supervising [sic] Mr. Santa Maria do not adequately understand his condition nor do they demonstrate the ability to provide Mr. Santa Maria with the proper balance of setting reasonable goals and limits, while concurrently, provide [sic] him with support and guidance.

\* \* \* \* \* \*

I believe Mr. Santa Maria should be provided such an environment within a realistic time frame to meet specific, reasonable, and concrete requirements

for continued employment. This should take place over a three to four month period rather than a 30 day period.

Knueven did not reply to Larson's letter, but filed it in Santa Maria's medical file without showing it to other PacBell personnel, out of concern, she later testified, for Santa Maria's privacy. It is significant to note that *Santa Maria knew that his doctor had sent a letter to PacBell.* However, he neither saw nor requested a copy of it. Santa Maria did request that Ms. Knueven show the letter to his supervisors, and Knueven did communicate the essence of Dr. Larson's recommendations to PacBell personnel after Santa Maria's 30-day improvement program expired.

Dr. Larson's letter caused PacBell managers to extend Santa Maria's improvement program to until December 1, 1995. The extended program was similar to the 30-day program, but set out additional objectives and deadlines, and included a few objectives from the original improvement program that Santa Maria had not yet completed. Santa Maria's workload also was increased. PacBell managers told him that this was pursuant to an agreement with Santa Maria's doctor because Santa Maria "was only doing ⅓ of the work for the first 6 week period." It is unclear how much Santa Maria's workload increased under the extended program; however, Santa Maria testified at trial that the goals of the extended program were reasonable. Santa Maria also continued to receive "coaching" during the extended improvement plan. By the end of the program period, Santa Maria had failed to meet all but a few of the objectives of the extended program. He was terminated from employment with PacBell on December 11, 1995.

**B. Procedural History**

On February 29, 1996, Santa Maria filed a charge of age and gender discrimination against PacBell with the California Department of Fair Employment and Housing. He thereafter filed suit in the Cali-

fornia Superior Court for the County of San Francisco alleging that he was fired because of his age and gender.

While conducting discovery in the age and gender discrimination lawsuit, Santa Maria claims he discovered for the first time two facts that then caused him to believe that he also may have been the victim of disability discrimination. First, Santa Maria and his lawyer learned the exact contents of the September 14, 1995 letter written by Dr. Larson to Beth Knueven. Second, contrary to what he previously had been told by his supervisors, he learned during the course of Dr. Hersch's deposition that Dr. Hersch had not made any recommendations regarding the duration of Santa Maria's extended improvement program.

Because Santa Maria had filed his age and gender discrimination charges with the California Department of Fair Employment and Housing, he had 300 days (instead of the usual 180 days) from the last act of discrimination in which to file an EEOC charge.[2] Since Santa Maria was fired on December 11, 1995, the 300 day period ended on October 7, 1996. On December 1, 1996, Santa Maria's attorneys served PacBell with an amended complaint in the state court suit asserting a new cause of action for disability discrimination under California law. However, it was not until December 19, 1996—73 days after the 300-day deadline—that Santa Maria finally filed an EEOC charge alleging disability discrimination.

Less than a month later, Santa Maria filed suit in the United States District Court for the Northern District of California alleging that PacBell had failed to reasonably accommodate his mental disability of major depression as required by the Americans with Disabilities Act ("ADA"). PacBell moved for summary judgment, claiming among other things, that Santa Maria's claim was time-barred.

The district court denied PacBell's motion, ruling that although Santa Maria filed his EEOC charge past the prescribed limi-

tations period, he had "supported the allegations of fraudulent concealment contained in the first amended complaint, thus warranting equitable tolling of the statute of limitations." The district court reasoned that although Santa Maria admitted he was aware of his mental disability prior to the running of the limitations period, Santa Maria was not aware of the existence of his ADA claim prior to the running of the limitations period due to PacBell's conduct.

A jury returned a verdict in favor of Santa Maria resulting in a judgment in his favor totaling $436,740. PacBell filed a post-trial motion renewing its contention, among others, that Santa Maria's claim was barred for failure to timely file an EEOC complaint. The court denied PacBell's motion. PacBell filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Standard of Review

A district court's decision as to whether a claim is barred by the statute of limitations is reviewed de novo. *See Capital Tracing, Inc. v. United States*, 63 F.3d 859, 861 (9th Cir.1995). However, a district court's decision whether a statute of limitations has been equitably tolled is generally reviewed for an abuse of discretion, unless the facts are undisputed, in which event the legal question is reviewed de novo. *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir.1998); *Clark v. Runyon*, 116 F.3d 275, 277 (7th Cir.1997); *EEOC v. Kentucky State Police Department*, 80 F.3d 1086, 1094 (6th Cir.1996); *Arnold v. Air Midwest*, 100 F.3d 857, 861 (10th Cir.1996); *Doherty v. Teamsters Pension Trust Fund of Philadelphia and Vicinity*, 16 F.3d 1386, 1389 (3rd Cir.1994); *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir.1986)(de novo review when evidentiary facts relied on for equitable tolling are undisputed) *but see Justice v. United States*, 6 F.3d 1474, 1478 (11th Cir.1993)(equitable tolling determination

**2.** See Section III, *infra*.

reviewed de novo); *Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir.1990)(equitable tolling decision made on summary judgment reviewed de novo).

■ This court reviews the district court's decision whether to apply the equitable estoppel doctrine for an abuse of discretion. *See Hoefler v. Babbitt*, 139 F.3d 726, 727 (9th Cir.1998).

### III. Analysis

A plaintiff must file a timely charge of discrimination with the EEOC as a prerequisite to maintaining an ADA action. *See* 42 U.S.C. § 12117(a) (incorporating the enforcement procedures set forth at 42 U.S.C. § 2000e–5). 42 U.S.C. § 2000e–5(e) requires that a complainant file a charge with the EEOC within 180 days of the last act of alleged discrimination, unless the complainant initially institutes proceedings with a state or local agency, in which case the EEOC charge must be filed within 300 days. Because Santa Maria originally brought his charges of age and gender discrimination with the California Department of Fair Employment and Housing, the 300–day time limit applies in this case.

Santa Maria alleges that the last act of alleged discrimination against him took place on December 11, 1995, the date on which he was fired. The 300–day time limit thus commenced on that day and expired on October 7, 1996. It is undisputed that Santa Maria did not file a charge with the EEOC until December 19, 1996.

■ In a Title VII suit, failure to file an EEOC charge within the prescribed 300–day period is not a jurisdictional bar, but it is treated as a violation of a statute of limitations, complete with whatever defenses are available to such a violation, such as equitable tolling and estoppel. *See Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir.1986). Because the ADA adopts the procedural requirements of Title VII, including the EEOC filing requirement, this principle holds equally true for ADA suits when the EEOC charge is filed outside the prescribed period. *See* 42 U.S.C. § 12117(a).

The district court found that the statute of limitations was tolled because Santa Maria claimed he had not learned of PacBell's possible ADA violation until some time after he was fired from his job; however, the district court's precise doctrinal basis for that holding is unclear on the record before us. At various times the district court appeared to discuss both equitable estoppel and equitable tolling, but it is unclear whether the district court intended to rely on one, the other, or both doctrines to extend the limitations period in this case. We therefore review for the applicability of both doctrines and find that whatever theory the district court relied on to toll the limitations period, it was an abuse of the court's discretion to do so.

#### A. Equitable Estoppel

■ Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant. *See Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981). A finding of equitable estoppel rests on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied. *See id.* The Seventh Circuit has further explained that equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.... Equitable estoppel in the limitations setting is sometimes called fraudulent concealment." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51

(7th Cir.1990). Equitable estoppel may apply against an employer when the employer misrepresents or conceals facts necessary to support a discrimination charge. *See Rhodes v. Guiberson Oil Tools Division,* 927 F.2d 876, 878–79 (5th Cir.1991).

■ In *Cada,* the plaintiff attempted to invoke equitable estoppel to excuse his failure to file an EEOC charge within the requisite time. He claimed that his former employer had engaged in fraudulent concealment in concocting a sham reorganization plan in order to fire him because of his age. He argued that the employer's fraudulent conduct equitably estopped it from asserting the plaintiff's untimely EEOC filing. The Seventh Circuit rejected this attempt to apply equitable estoppel in these circumstances. The court reasoned that to do so would merge the tolling doctrine with the substantive wrong, and would virtually eliminate the statute of limitations in age discrimination cases as it would "impl[y] that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, 'We're firing you because of your age.'" *Cada,* 920 F.2d at 451. Fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.

Santa Maria contends that PacBell is equitably estopped from asserting the 300–day limitations period because of three acts of deception by PacBell. First, Santa Maria claims PacBell represented that his workload under the extended improvement program was being increased and the program extended at the recommendation of Dr. Hersch; in fact, it was Dr. Larson who recommended extending the program. Second, Santa Maria claims that PacBell falsely represented that his own doctor, Dr. Larson, had agreed to the conditions of Santa Maria's extended improvement plan; in fact, Dr. Larson agreed to some, but not all, of the plan. Third, Santa Maria asserts PacBell "hid" evidence from him by not showing him a copy of Dr. Larson's letter to Beth Knueven containing his recommendations for Santa Maria's work conditions.

■ As to the first contention, it is true, as Santa Maria points out, that the recommendation to extend the program originated with Dr. Larson, not Dr. Hersch. However, we fail to see how this point possibly could have misled Santa Maria into refraining from filing his EEOC charge. It is of no consequence whether it was Dr. Hersch or Dr. Larson who first recommended extending the improvement program. The fact remains that Santa Maria was granted the extension.

■ Santa Maria's second contention is that PacBell misrepresented Dr. Larson's consent to Santa Maria's work conditions. Santa Maria contends that PacBell fraudulently concealed evidence from him by assigning Santa Maria a full workload at the beginning of the extended improvement program, and representing that Dr. Larson had agreed to such an arrangement when in fact he had not. Dr. Larson recommended that Santa Maria be eased back gradually into a full-time workload.

However, if a misrepresentation is to equitably estop PacBell from asserting the statute of limitations, Santa Maria must show that his reliance on it was reasonable. *See Naton,* 649 F.2d at 696. Regardless of what someone at PacBell may have said to Santa Maria about Dr. Larson's recommendations, it is important to remember that Dr. Larson was Santa Maria's own doctor, and that Santa Maria and Dr. Larson were in contact with one another both before and after Santa Maria returned to work. Santa Maria had ample opportunity to discuss with Dr. Larson— both before he was fired and, more importantly, within the 300 days afterward— whether the extended improvement program was appropriate for him. In his attempt to justify why he did not file his EEOC charge in time, Santa Maria simply has not explained why it was reasonable for him to rely on PacBell's second-hand representations of Dr. Larson's advice in-

stead of on Dr. Larson himself, especially since he was fired shortly after returning from his disability leave.

Like the plaintiff in *Cada*, Santa Maria has conflated the allegation of the failure to accommodate with an attempt to fraudulently conceal that wrong. In this case, the allegation that PacBell *claimed* to be accommodating Santa Maria's disability but did not *do* so is not sufficiently distinct from the underlying claim of PacBell's failure to accommodate to constitute the additional active conduct required to constitute fraudulent concealment and to invoke equitable estoppel. *See Cada*, 920 F.2d at 451.

■ Finally, Santa Maria also contends that PacBell concealed documentary evidence, namely the letter from Dr. Larson to Beth Knueven. While it is true that PacBell never gave Santa Maria a copy of Dr. Larson's letter prior to discovery in the age and gender discrimination lawsuit, it is equally true that Santa Maria knew that it existed but never sought a copy from PacBell. To repeat, Dr. Larson was Santa Maria's own doctor. There is no reason to believe that if Santa Maria wanted the letter, he could not have gotten it.

In summary, the undisputed facts show that none of the supposed fraudulent concealments about which Santa Maria complains warrants the application of equitable estoppel as a matter of law.

B. Equitable Tolling

■ Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff

can gather what information he needs. *See Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 268 (7th Cir.1995); *Cada*, 920 F.2d at 451. However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty. *See Thelen*, 64 F.3d at 268 (citing *Cada*, 920 F.2d at 451).

■ In this case, it was an abuse of discretion to apply the equitable tolling doctrine. Viewing the facts in the light most favorable to Santa Maria, they show that he knew or should have known of the possible existence of a disability discrimination claim as early as the very day he was fired:

· He knew he had a mental disability;

· He knew that PacBell knew he had a mental disability;

· He knew he had been on leave from PacBell for that disability;

· He knew that PacBell was aware that his treatment for that disability continued even after he returned from disability leave;

· He knew that PacBell had been in contact with Dr. Larson about his disability and that Dr. Larson had made recommendations about Santa Maria's work conditions;

· He knew that after PacBell received a letter from Dr. Larson about his disability and working conditions, his improvement program was extended and his workload increased;

· He knew that he had failed to meet most all of the objectives of his extended improvement program, and told his supervisor that this was due to his medication and inability to cope with the pressure;

· He knew that PacBell had fired him four months after coming back from disability leave.

These undisputed facts compel the conclusion that Santa Maria knew or reasonably should have known of the possible existence of a disability discrimination

claim within the limitations period. Santa Maria need not have marshaled every conceivable item of proof he might eventually be able to use at trial.

 It also must be remembered that Santa Maria and his lawyer came into possession of the supposedly "newly discovered evidence" (Dr. Hersch's deposition testimony and the text of Dr. Larson's letter) at least two weeks *prior* to the running of the 300–day limit. Santa Maria acknowledges that he was in possession of these materials before the time ran out, but claims that his obligations under Rule 11 of the Federal Rules of Civil Procedure precluded him from filing with the EEOC before Dr. Hersch's deposition was complete. This simply is not so. The obligations of Rule 11 extend only to suits filed in federal court, not to such administrative procedures as filing a charge with the EEOC. *See Thelen,* 64 F.3d at 268; *Cada,* 920 F.2d at 452. In fact, the very nature of an EEOC charge makes this clear: the charge serves as an allegation of wrongdoing which the EEOC investigates to determine if it has merit. There is no legally cognizable excuse for failing to file the EEOC charge before the statute of limitations ran on October 7, 1996.

 Equitable tolling may not be invoked by an ADA plaintiff who, within the limitations period, has sufficient information to know of the possible existence of a claim. To excuse the failure to timely file under these circumstances would, in Judge Posner's words, "trivialize the statute of limitations by promiscuous application of tolling doctrines." *Cada,* 920 F.2d at 453. Accordingly, we REVERSE the judgment of the district court. We REMAND with directions to VACATE the judgment and enter judgment in favor of Pacific Bell.

FLETCHER, Circuit Judge, Dissenting:

I respectfully dissent from the majority opinion because it improperly second-guesses the district court's grant of equitable estoppel. Decisions to grant or deny equitable estoppel are reserved to a district court, and must not be reversed absent abuse of discretion. *See Hoefler v.*

*Babbitt,* 139 F.3d 726, 727 (9th Cir.1998). Here, the majority purports to apply the abuse of discretion standard, but in effect substitutes its own judgment for that of the district court. The effect of the majority decision is to invalidate a jury award in favor of the plaintiff in this disability discrimination case.

Under the doctrine of equitable estoppel, an employer is estopped from asserting a statute of limitations defense if the employer "misrepresented or concealed 'facts necessary to support a discrimination charge.'" *Rhodes v. Guiberson Oil Tools Division,* 927 F.2d 876 (5th Cir. 1991); *see also Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981) ("Equitable modification of the limitations period may be appropriate when misleading conduct of the defendant has induced the plaintiff to delay filing notice of intent to sue.").

Here, the district court found that Pac-Bell made a material misrepresentation when it told Santa Maria that Dr. Larson consented to Santa Maria's work conditions, and that PacBell fraudulently concealed evidence—namely, the contents of Dr. Larson's letter—that would have led Santa Maria to recognize that he had a claim for discrimination under the ADA. The jury heard evidence supporting Santa Maria's allegation that PacBell misled him into believing that it was following his doctor's orders in the design of the "improvement program," and decided in Santa Maria's favor, awarding both compensatory and punitive damages. The district court acknowledged that Santa Maria's testimony at trial "supported the allegations of fraudulent concealment." Maj. Op. at 1175.

The majority opinion implicitly accepts the district court's finding of fraudulent concealment when it analyzes whether Santa Maria had reasonably relied upon the misrepresentation. However, in conducting the reasonableness inquiry the majority takes a peculiar leap of logic. It holds that it was unreasonable for Santa

Maria to rely upon PacBell's representations about its treatment of Santa Maria as in accord with Dr. Larson's advice, even though PacBell fraudulently concealed key information. The majority would have Santa Maria play the sleuth to dig up the truth. In effect, the majority would require Santa Maria to investigate his employer's statement regarding the letter from Dr. Larson as a precondition to his disability discrimination claim. And, the majority holds, it was an abuse of discretion for the district court to hold otherwise. I strongly disagree. An employee should be able to rely upon his employer's statements regarding correspondence between the employer and the employee's doctor. Although we *now* know that Santa Maria should have been suspicious of Pac-Bell's underhanded dealings, we must not rule based on our 20-20 hindsight.

I submit that the record supports the district court's application of equitable estoppel, and that the district court should be affirmed on this point. But we do not have to agree with the district court to affirm its decision. Where, as here, we are reviewing the district court's decision for abuse of discretion, we must uphold the determination if it "falls within a range of permissible conclusions." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Here, the district court's determination was well within that "range of permissible conclusions." Under the circumstances, I believe the majority not only commits error but also does an injustice by reversing the district court and throwing out a jury verdict holding PacBell liable for discriminating against Santa Maria.