**Hershel M. TAXEY, as the personal representative of the Estate of Ayako Watanabe, Plaintiff,**

v.

**MARICOPA COUNTY, a political body, Defendant.**

**No. CIV.00–451–PHX–EHC.**

United States District Court, D. Arizona.

Aug. 14, 2002.

Nicholas Jason Enoch, Lubin & Enoch PC, Phoenix, AZ, Jeffrey F Arbetman, Arbetman Law Office PC, Phoenix, AZ, for Ayako Watanabe, Hershel M. Taxey.

Mary C Cronin, Maricopa County Attorney's Office, Division of County Counsel, Phoenix, AZ, for County of Maricopa.

## ORDER

CARROLL, District Judge.

Pending before the Court is Plaintiff's Motion in Limine # 1 [1] [Dkt. 71], and Defendant's Motion for Summary Judgment.[2] [Dkt. 72].

### I. Facts

On August 18, 1997, Ayako Watanabe applied for the position of Accountant I

---

1. Defendant's Response to Plaintiff's Motion in Limine # 1 is at docket 74.

2. Plaintiff's Response to Defendant's Motion for Summary Judgment is at docket 78, and Defendant's Reply is at docket 82.

with Maricopa County in the finance division of the Maricopa County Sheriff's Office. [Dkt. 21 at 3, ¶ 10]. On September 11, 1997, Sergeant Paul J. Russo sent Watanabe a letter stating that she had not been selected for the position of Accountant I. [Dkt. 73, Exh. 1, bates no. 325]. Watanabe received this notice approximately one week later. [Dkt. 79, Exh. B at p. 64].

On September 24, 1997, Watanabe filed a Charge of Discrimination with the Arizona Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC") in which she alleged age discrimination under the Age Discrimination in Employment Act ("ADEA"). [Dkt. 73, Exh. 2, bates no. 002]. In this Charge of Discrimination, Watanabe did not allege that Maricopa County had discriminated against her on the basis of her national origin in violation of Title VII. [*Id.*].

The EEOC requested Maricopa County to provide them with its position statement as to Watanabe's allegation by October 22, 1997. [Dkt. 73, Exh. 2, bates no. 001]. On February 12, 1998, the EEOC sent a letter to Maricopa County which notified it that it was overdue in submitting its position statement as to Watanabe's allegation. [Dkt. 79, Exh. C]. On February 20, 1998, Maricopa County submitted its position statement to the EEOC, denying that it had discriminated against Watanabe on the basis of her age in violation of the ADEA. [Dkt. 73, Exh. 3]. Maricopa County stated that Watanabe "was not hired because the individuals selected for the accountant I positions were rated higher during the interview process." [*Id.*]. Maricopa County also stated:

[Watanabe] was not one of the five highest ranked applicants and therefore was not selected to continue processing. [Watanabe] received a poor rating in the interview due to her lack of English language proficiency. She was not able to communicate her answers to the questions that were asked. These poor communication skills would have hindered her ability to perform some of the essential functions of the job of Accountant I, which require the ability to communicate in person and by phone with employees, supervisors, and division commanders in order to convey information and answer questions.

[*Id.*].

On August 27, 1998, the EEOC notified Watanabe's husband, Hershel M. Taxey, that Watanabe's EEOC charge needed to be amended to include an allegation of national origin discrimination, and that after the amendment was prepared by the EEOC, it would be mailed to Watanabe for her to initial. [Dkt. 79, Exh. E]. On September 2, 1998, Watanabe's Charge of Discrimination was amended to include the allegation of national origin discrimination. [Dkt. 73, Exh. 4, bates no. 011].

On June 25, 1999, the EEOC issued a Determination as to Watanabe's charges. The EEOC found "reasonable cause to believe that [Watanabe] was denied hire because of her national origin, specifically, her Japanese accent," but made no finding on Watanabe's claim of age discrimination. [Dkt. 71, Exh. B].

On October 2, 2000, Watanabe filed an Amended Complaint against Maricopa County alleging that it discriminated against her on the basis of her national origin. [Dkt. 21].[3]

---

**3.** On March 30, 2001, counsel for Watanabe filed a Notification of Death of Ayako Watanabe. [Dkt. 46]. On June 14, 2001, the parties filed a stipulated motion that Watanabe's husband, Hershel M. Taxey, as personal representative of the estate of Ayako Watanabe, be substituted as Plaintiff. [Dkt. 55]. The Court granted the parties' stipulated motion for substitution on June 20, 2001. [Dkt. 60].

## II. Plaintiff's Motion in Limine

Plaintiff filed a Motion in Limine # 1 for an Order "permitting the introduction of documentary evidence and/or testimony concerning the Equal Employment Opportunity Commission's ('EEOC') investigation and disposition of Watanabe's Charge of Discrimination" during both the upcoming trial and in response to Maricopa County's Motion for Summary Judgment. [Dkt. 71].

Maricopa County filed a Response to Plaintiff's Motion in Limine # 1 stating that it does not object to Plaintiff's use of the June 25, 1999 reasonable cause finding by the EEOC in response to Maricopa County's Motion for Summary Judgment or at trial; however, it objects to the admissibility of testimony concerning the EEOC's investigation into Watanabe's charge of discrimination because the investigator has not been deposed. [Dkt. 74].

The Court will grant Plaintiff's Motion in Limine # 1 to the extent that Plaintiff may use the June 25, 1999 reasonable cause finding by the EEOC in its Response to Maricopa County's Motion for Summary Judgment and at trial.

## III. Summary Judgment Standard

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). In a civil case, the question is:

> whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery responses which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party that has the burden of proof on the issue at trial must establish all of the essential elements of the claim or defense for the court to find that the moving party is entitled to judgment as a matter of law. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986). However, the moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553. "The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## IV. Defendant Maricopa County's Motion for Summary Judgment

■ Maricopa County argues it is entitled to summary judgment on Plaintiff's

claims because Watanabe failed to file her charge of national origin discrimination with the EEOC within the 300 day statutory limitation period, and her charge of national origin discrimination does not relate back to her original charge of age discrimination which was filed with the EEOC on September 24, 1997. [Dkt. 72].

Title VII requires that a plaintiff timely file charges of discrimination with the EEOC and receive a right to sue letter from the EEOC prior to bringing a Title VII claim in federal court. *See* 42 U.S.C. § 2000e–5(e). Specifically, Title VII mandates that a plaintiff file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice, unless the plaintiff initially institutes proceedings with a state or local agency, in which case the time limit for filing a charge with the EEOC is extended to 300 days. *See* 42 U.S.C. § 2000e–5(e)(1); *Santa Maria v. Pacific Bell,* 202 F.3d 1170, 1176 (9th Cir.2000).

*Relation back*

Certain amendments to a charge of discrimination may relate back to the filing date of the original charge of discrimination and, therefore, be considered timely even if the amended charge takes place after the limitations period. 29 C.F.R. § 1601.12(b); *see Simms v. Oklahoma,* 165 F.3d 1321, 1325 (10th Cir.1999). In order for an amended charge of discrimination to relate back, it must 1) cure technical defects or omissions, 2) clarify or amplify allegations made in the original charge; or 3) allege additional Title VII violations "related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(b); *Simms,* 165 F.3d at 1325.

Watanabe originally filed her age discrimination charge on September 24, 1997. She did not amend it to add the national origin discrimination claim until September 2, 1998, well after the 300 day time limit. Plaintiff argues that although Wa-

tanabe's national origin discrimination charge was filed after the limitations period, it relates back to Watanabe's original charge of age discrimination. [Dkt. 79].

As the Ninth Circuit has noted, "Title VII and ADEA claims arise from entirely distinct statutory schemes." *Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 675 (9th Cir.1988). Watanabe's original charge alleging age discrimination contains no hint of national origin discrimination. Furthermore, Watanabe's amended charge of national origin discrimination fails to clarify or amplify allegations made in the original charge, and does not allege additional Title VII violations related to or growing out of the subject matter of the original charge, age discrimination. Thus, Watanabe's amended charge of national origin discrimination does not relate back, and is therefore untimely. *See id., Rodriguez v. Airborne Express,* 265 F.3d 890, 898–900 (9th Cir.2001).

*Equitable tolling*

■ Although Watanabe's national origin discrimination claim does not relate back to her age discrimination claim, equitable tolling may be applied to extend the limitations period for Watanabe to file her national origin discrimination claim.

■ "In a Title VII suit, failure to file an EEOC charge within the prescribed 300–day period is not a jurisdictional bar, but it is treated as a violation of a statute of limitations, complete with whatever defenses are available to such a violation, such as equitable tolling and estoppel." *Santa Maria,* 202 F.3d at 1176. The period within which the plaintiff must file the charge begins to run on the date the employee received notice of the employment decision. *See Aronsen v. Crown Zellerbach,* 662 F.2d 584, 593 (9th Cir.1981) ("[I]n Title VII ... suits, inquiry for purposes of determining when the limitations period begins to run must center on the

date when the employee has notice of the unlawful act."). However, courts have recognized circumstances warranting the equitable tolling of this limitation period. Equitable tolling focuses on whether there was excusably delay by the plaintiff. *See Santa Maria,* 202 F.3d at 1178.

In *Reeb v. Economic Opportunity Atlanta, Inc.,* the plaintiff was notified by a letter that her employment contract would not be renewed because of a "limitation of funds." 516 F.2d 924, 926 (5th Cir.1975). The letter was dated September 24, 1969, and indicated that the plaintiff's termination would be effective immediately. Initially, the plaintiff accepted the rationale for her termination. However, in the spring of 1970, the plaintiff, for the first time, learned that her position had subsequently been refilled on November 10, 1969, by an allegedly less qualified male employee. When the plaintiff learned of her replacement, she immediately filed charges of sex discrimination with the EEOC. *Id.*

At the time the plaintiff learned her position had been refilled, the time period for filing a charge of employment discrimination with the EEOC had already passed. The Fifth Circuit held, though, that the time period in which to file a charge of employment discrimination with the EEOC did not begin to run "until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person" with a reasonably prudent regard for his rights similarly situated to the plaintiff. *Id.* at 931.

In *Santa Maria v. Pacific Bell,* 202 F.3d 1170 (9th Cir.2000) the Ninth Circuit considered a situation similar to that in *Reeb.* However, the plaintiff in *Santa Maria* knew or reasonably should have known of the existence of a possible discrimination claim within the time limit for filing a charge of discrimination. The Ninth Circuit held that equitable tolling will not excuse the untimely filing of an EEOC charge by a plaintiff who, within the time limit, knew or should have known of the existence of a possible discrimination claim. *Id.* at 1179.

Here, Watanabe received a letter on September 18, 1997, from Maricopa County informing her that she was not selected for the position of Accountant I. [Dkt. 83, Exh. 5, § 3]. On September 24, 1997, Watanabe filed a Charge of Discrimination with the Arizona Civil Rights Division and EEOC alleging age discrimination. [Dkt. 73, Exh. 2, bates no. 002]. On February 20, 1998 Maricopa County filed its position statement with the EEOC in which it stated that Watanabe was not selected for the position of Accountant I because she "received a poor rating in the interview due to her lack of English proficiency." [Dkt. 73, Exh. 3].

There is nothing in the record to indicate that Watanabe received a copy of Maricopa County's position statement after it was filed in February 1998.[4] On August 27, 1998, after the 300 day limitation period had passed, the EEOC notified Watanabe's husband that Watanabe's EEOC charge needed to be amended to include an allegation of national origin discrimination. [Dkt. 79, Exh. E]. According to Watanabe, she did not learn of her national origin discrimination claim until the EEOC told her about it. [Dkt. 73, Deposition of Ayako Watanabe, p. 69]. Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Watanabe knew or could reasonably have been

---

4. The Court also notes although Maricopa County was ordered to file its position statement with the EEOC by October 22, 1997, it was not filed until February 10, 1998, almost four months later. [Dkt. 73, Exh. 2, bates no. 001; Dkt. 79, Exh. C; Dkt. 73, Exh. 3].

expected to learn of the facts that would support her charge of national origin discrimination within the 300 day limitation period, and thus, whether the 300 day limitation period should be equitably tolled. The Court will therefore deny Maricopa County's motion for summary judgment.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion in Limine [Dkt. 71] is **GRANTED** to the extent that Plaintiff may use the June 25, 1999 reasonable cause finding by the EEOC in its Response to Defendant's Motion for Summary Judgment and at trial.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Dkt. 72] is **DENIED**.