Opinion by Judge McKeown; Dissent by Judge Reinhardt
MeKEOWN, Circuit Judge.
Lanny Huseman appeals the district court’s decision on summary judgment that his Jones Act, 46 App. U.S.C. § 688, and unseaworthiness claims against Icicle Seafoods, Inc. (“Icicle”) were time-barred and that his maintenance and cure claim was barred by laches. As to the Jones Act and unseaworthiness claims, Huseman does not dispute that his filing was untimely and beyond the three year limitations period. Instead, he argues that he should be allowed to proceed under the theories of equitable tolling or equitable estoppel.
Given the circumstances of this case, Huseman cannot establish the requirements for either equitable tolling or equitable estoppel. Huseman asks us to fashion, under the “wards of the court” doctrine for seamen, a broad fiduciary duty that would require employers, like Icicle, to affirmatively disclose and explain federal causes of action, including Jones Act and unseaworthiness claims, to their employees. We are mindful of the special remedies and protections reserved for seamen because of the perils of the sea and the hard conditions of their labor; we decline however, to embrace such an unprecedented extension of the “wards of the court” doctrine. Although ship owners owe a duty “to act in good faith and to deal fairly in performing and enforcing ... contracts],” Flores v. Am. Seafoods Co., 335 F.3d 904, 913 (9th Cir.2003), these duties do not extend so far as to render ship owners legal advisors to their employees in all contexts. Compare Orsini v. O.S. Seabrooke O.N., 247 F.3d 953, 964 (9th Cir.2001) (shipowner is required to provide legal advice regarding the seaman’s rights before seaman may sign a release of those rights).
As to the maintenance and cure claim, we agree with Huseman that the district court erred in its laches determination. Huseman filed suit within a month after learning of his potential claim and less than six months after the three year limitations period for the other claims expired. The district court did not, as required by our case law, make specific findings of prejudice to support the laches bar and did not balance any prejudice against the short duration of the delay and Huseman’s justification.
We therefore affirm the district court’s dismissal of Huseman’s Jones Act and unseaworthiness claims, and reverse and remand on his maintenance and cure claim. This result does not, as the dissent suggests, leave the seaman devoid of legal redress, nor does it foreclose the invocation of equitable estoppel or equitable tolling in the appropriate case. See Thorman v. Am. Seafoods Co., 421 F.3d 1090, 1096 (9th Cir.2005).
Background
Sometime in March or April of 2000, Huseman injured his shoulder while working for Icicle aboard the Discovery Star. At the time of his hire as a seafood processor, Huseman received a document entitled “Terms of Employment,” which included the following clause informing him about potential maritime benefits:
If you are injured while working on the floating processor, it may be covered under Alaska Worker’s [sic] Compensation and/or under Federal Maritime benefits. Unless requested otherwise, we will process any claim through the Alas *1119 ka Workers’ Compensation system and coordinate any additional benefits that may be due under Federal Maritime Law; however, you may request at any time to opt out of the Alaska Worker’s Compensation system in favor of Federal benefits.
After learning of Huseman’s injury, Icicle filed an Alaska Workers’ Compensation Report with the Alaska Department of Labor, as required by Alaska law. See Alaska Stat. § 23.30.070 (1970). The Alaska Department of Labor then sent Huseman an explanatory pamphlet, which Huseman remembers receiving and reading. The pamphlet explains coverage and invites questions, stating that “[njearly all Alaska employees are covered. Commercial fishers are an exception, but some fish processor workers on floating processing vessels are covered.” The pamphlet goes on to state that “[ajlthough federal employees and most maritime workers are not covered under Alaska law, they may be covered under federal law. If you want to know whether you are covered, contact the [Workers’ Compensation] Division.” Since his injury, Huseman has received continuous coverage by way of medical treatment and disability payments under the Alaska workers’ compensation system. Huseman did not inquire about the availability of federal remedies, nor about his eligibility for additional benefits beyond the workers’ compensation benefits that he was already receiving.
Nearly three and one-half years after his injury, Huseman filed suit in federal court alleging federal maritime claims of negligence under the Jones Act, unseaworthiness, and maintenance and cure. Huse-man was deposed and testified that he had received and read the Terms of Employment and the pamphlet from the Alaska Workers’ Compensation Board, both of which included statements regarding potential federal remedies. Huseman said that he did not understand the reference to federal benefits, and further, that he had forgotten about those documents by the time of his injury. Significantly, Huse-man acknowledged that no one at Icicle or the Alaska Workers’ Compensation Board told him that he could not pursue federal claims, and that he never asked about the availability of federal remedies. Huseman testified that had he inquired, Icicle and the Alaska agency probably would have explained the federal claims to him.
Icicle filed a motion for summary judgment, arguing that Huseman’s claims were barred on timeliness grounds. The district court granted the motion, finding that “(a) [Huseman] was unaware that seamen such as himself might have claims under the Jones Act and general maritime law, (b) [Icicle] did not advise him of that fact, and (c) [Huseman] made no effort to ascertain whether he had any remedy other than that afforded by the Alaska State Workers’ Compensation Act.” The district court also held that no one at Icicle misled Huseman regarding the availability of federal remedies. Instead, as the district court pointed out, Huseman based his argument on the Terms of Employment, claiming that the document was misleading. Because Huseman admitted that he did not understand the reference to federal benefits in the Terms of Employment and that he had completely forgotten about the reference by the time of his injury, the district court concluded that Huseman could not have relied on the Terms of Employment in filing his suit beyond the statute of limitations. Accordingly, Huse-man’s Jones Act and unseaworthiness claims were time-barred.
With regard to maintenance and cure, the district court recognized that there is a dispute as to whether laches or the statute of limitations determined the timeliness of *1120 the claim. The district court did not decide the issue and instead held that the expiration of the statute of limitations brings a presumption that laches applies and that, absent good reason for an extension, the claim is barred. Because Huse-man based his claim on ignorance of the law and his failure to inquire about the federal claims, the district court found his delay in filing unreasonable. Without further explanation, the district court also found that Icicle would be prejudiced by the late filing and held the maintenance and cure claim time-barred under laches.
Analysis
Typically, “fwje review de novo a grant of summary judgment and must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.” Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). This is a case, however, in which “[t]he law of this Circuit is somewhat inconsistent regarding the standard of review applicable to a district court’s determination of whether equitable estoppel or equitable tolling applies to a claim barred by the statute of limitations.” Johnson v. Henderson, 314 F.3d 409, 413 (9th Cir.2002). Generally, when — as here — the facts are undisputed, we review the district court’s decision regarding equitable tolling de novo, and equitable estop-pel for an abuse of discretion. Id. at 413-14; Santa Maria v. Pac. Bell, 202 F.3d 1170, 1175-76 (9th Cir.2000).
Huseman’s arguments for preserving his Jones Act and unseaworthiness claims rely on equitable tolling and equitable estoppel. As we explain below, equitable tolling is not warranted because Huseman did not exercise due diligence in pursuing his federal claims. Huseman cannot take advantage of equitable estoppel because he did not (nor could he) reasonably rely on the disputed paragraph in the Terms of Employment or on Icicle’s conduct in delaying his filing, since he concedes that he did not remember or refer to the Terms of Employment at the time of his injury. The dissent’s attempt to impute reasonable reliance on the paragraph to Huseman is pure and unsupported speculation.
I. Equitable Tolling
Equitable tolling “focuses on whether there was excusable delay by the plaintiff’ and “may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim.” Santa Maria, 202 F.3d at 1178 (emphasis added); see also Burnett v. New York Cent. R. Co., 380 U.S. 424, 429, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (allowing equitable tolling if “a plaintiff has not slept on his rights, but rather, has been prevented from asserting them”). Huseman’s equitable tolling claim, unlike his equitable estoppel claim, is founded on his conduct and due diligence. The absolute lack of any effort on his part to inquire about available options defeats his equitable tolling claim.
Huseman acknowledges that he made no effort to ascertain whether he had any remedy other than that afforded by the Alaska Workers’ Compensation Act, despite opportunities to do so with Icicle and the Alaska Workers’ Compensation Board:
Q: Have you ever talked to anyone at the Alaska Workers’ Compensation Board about rights you might have, remedies you might have, entitlement to money or benefits outside of the Workers’ Comp[ensation] Act?
Huseman: No, never.... I assumed workers’ compensation] *1121 was all I’ve ever known my entire life.
Q: Have you ever talked to anybody else, either on the boat or since you left the boat, about what a person does if they’re injured working at sea?
Huseman: No. The first time I ever heard anything different [from workers’ compensation] is when I talked to [my attorney],
Q: Did you ask [Icicle] any questions about whether or not you had any right to anything outside of workers’ compensation]?
Huseman: No.
Q: Did you ever talk to anybody at all about whether workers’ compensation was the only place you could go to make a claim?
Huseman: No, I didn’t.
The pamphlet provided by the State of Alaska specifically invited inquiry to the Alaska Workers’ Compensation Division and at the end of the brochure had an additional section entitled, “If you still have questions.”
Huseman admits that he read the Terms of Employment, which stated that he could “request at any time to opt out of the Alaska Worker’s Compensation system in favor of Federal benefits” and that Icicle would coordinate those federal maritime benefits, i.e., maintenance and cure. Huseman also admits doing nothing to inquire about the federal benefits or the possibility of other remedies, such as federal claims, i.e., Jones Act and unseaworthiness claims:
Q: “[H]aving read this [paragraph in your Terms of Employment] before you were injured, did you ever at any time, either before you were injured or after, make any inquiry, question anybody in any way, in writing or verbally, about what it meant to be covered under federal maritime benefits?
Huseman: No, I didn’t.
Huseman did nothing to inquire about the availability or extent of federal remedies and until just before filing suit after the limitations periods had expired, never inquired of anyone about the process and timing for invocation of federal benefits. Under these circumstances, Huseman has not shown the requisite due diligence for equitable tolling. See Iturribarria v. INS, 321 F.3d 889, 897 (9th Cir.2003) (noting that due diligence is required to trigger equitable tolling).
II. Equitable Estoppel
Equitable estoppel, sometimes called fraudulent concealment, “focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit.... [including] the plaintiffs actual and reasonable reliance on the defendant’s conduct or representations.” Santa Maria, 202 F.3d at 1176. For example, “conduct or representations by the defendant-employer which tend to lull the plaintiff into a false sense of security, can estop the defendant from raising the statute of limitations, on the general equitable principle that no man may take advantage of his own wrong.” Atkins v. Union Pac. R.R., 685 F.2d 1146, 1149 (9th Cir.1982) (internal quotation marks and alterations omitted).
Huseman candidly admits that no one told him that his only available benefits were through Alaska Workers’ Compensation. He also acknowledges that if he had asked Icicle about the federal benefits mentioned in his Terms of Employ *1122 ment, he had no reason to believe that Icicle would have withheld such information from him:
Q: In all of your dealings with Icicle or any of its employees ... regarding your injury, did anybody ever tell you you had a right only to workers’ compensation?
Huseman: No.
Q: Did you ever read anything that said workers’ compensation is your only right?
Huseman: No.
Q: Can you think of anything anybody told you, whether it be ... any of the employees of Icicle, anybody you dealt with regarding your injury, can you think of anything anybody said that you felt misled you?
Huseman: No, not really, no.
Huseman instead points to the paragraph of the Terms of Employment, which states that Icicle will “coordinate any additional benefits that may be due under Federal Maritime Law” and that Huseman may “request at any time to opt out of the Alaska Worker’s Compensation system in favor of Federal benefits.” Significantly, at the time of his injury, Huseman had long since forgotten about this paragraph, and, regardless, claims not to have understood what it meant by the possibility of federal maritime benefits:
Q: Now, what would it mean to you, when you read this, to be covered under federal maritime benefits?
Huseman: That I don’t know.
Q: Did you ever ask?
Huseman: No, uh-uh.
Q: I mean, when you dealt with Icicle when you were injured, did you ever ask what it meant to be covered under federal maritime benefits?
Huseman: No, I didn’t.
Q: So when it came about at some point that you were injured on the floating processor, did you make inquiry of somebody about what this means, this paragraph [in the Terms of Employment]?
Huseman: No. I never even remembered that paragraph or anything about it.
Accordingly, Huseman cannot establish actual and reasonable reliance as required for equitable estoppel. See Guerrero v. Gates, 442 F.3d 697, 706-07 (9th Cir.2006) (noting that for equitable estoppel, “[t]he plaintiff must demonstrate that he relied on the defendant’s misconduct in failing to file in a timely manner and ‘must plead with particularity the facts which give rise to the claim of fraudulent concealment’ ”) (quoting Conerly v. Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir.1980)).
Faced with this difficulty, Huseman argues that the paragraph in the Terms of Employment, along with Icicle’s help in securing the Alaska Workers’ Compensation benefits, lulled him into a false sense of security in which he assumed that Icicle had taken on the affirmative duty of securing any available federal claims and benefits:
Q: Now, again, either before or after you were injured ... did you ever make any inquiry about [the possibility of federal benefits] with anybody at Icicle ..., anything like that?
Huseman: No, uh-uh, because basically workmen’s compensation] was there to help me. They were there taking care of everything.
Q: Okay. Did you ever get any explanation from anyone at Icicle ... or anybody else about what it meant to *1123 opt out of Alaska Workers’ Comp[ensation] in favor of federal benefits?
Huseman: No. It never came up.
Q: If it never came up, then I guess it never came up that anything was said that you felt was misleading?
Huseman: Well, no. I don’t think I was misled then because I was going to workmen’s comp[ensation]. But I felt that they directed me there.
Q: What do you mean they directed you there?
Huseman: They gave me all the paperwork to set up a workmen’s eomp[ensation] claim. Now I think it’s misleading, and I was trusting them.
The dissent suggests that the disputed paragraph in the Terms of Employment assured Huseman that he need not investigate further, and that Icicle would ensure that any and all monies due to him were received. This argument needs to be examined in the face of the evidence, not merely the dissent’s speculative characterization. See Guerrero, 442 F.3d at 707 (to bring a successful equitable estoppel claim, the plaintiff must “plead with particularity ... fraudulent behavior on the part of the defendants that would excuse his delay in bringing this suit”). It bears repeating that since Huseman had no recollection of the disputed paragraph in the Terms of Employment and never claimed that it was the basis for his inaction, it would be pure conjecture to conclude that that document is part of a legitimate claim that he was lulled into foregoing his federal rights.
Nonetheless, it is worth examining the paragraph. As explained by Icicle, the purpose of including the statement that Icicle would “coordinate any additional benefits that may be due under Federal Maritime Law” was to inform Huseman that at any time he was receiving Alaska Workers’ Compensation, he was free to choose instead the federal benefits. If such federal benefits were greater than those under Alaska Workers’ Compensation, Icicle would pay the difference. This is a reasonable reading of the paragraph, especially in light of the fact that Icicle’s coordination was not automatic since it required Huseman to affirmatively request “to opt out of the Alaska Worker’s Compensation system in favor of Federal benefits.”
Regardless of Icicle’s explanation of this paragraph, Huseman did not rely on the Terms of Employment in delaying his filing. To the contrary, his testimony was that he did not remember anything about the Terms of Employment at the time of his injury. He does not claim that he read it long ago and then sat back in reliance on the coverage explained therein. Thus, this paragraph can hardly be bootstrapped into a claim of fraudulent concealment. Instead, Huseman just “assumed” that Icicle would take care of everything for him, including his now untimely federal Jones Act and unseaworthiness claims, because Icicle was helping with his Alaska Workers’ Compensation benefits.
The question is whether that assumption was reasonable. By law, Icicle was required to file a claim for Huseman for the Alaska benefits. By doing so, did Icicle fraudulently conceal Huseman’s federal options? Could Icicle’s assistance in processing the Alaska Workers’ Compensation benefits reasonably be viewed as likely to mislead an employee into believing that Icicle voluntarily shouldered a duty to disclose, file, or process any federal claims arising out of an injury, such as a statutory cause of action under the Jones Act or a tort claim under the unseaworthiness doctrine?
*1124 Huseman’s assumption is insufficient to support an equitable estoppel claim. There is a wide gap between fraudulent concealment and even pernicious lulling into a false sense of security, and what occurred here. We agree with the district court’s succinct summation: “[Huseman] was not misled by anything defendants said, did not say, or did. He was simply unaware that seamen enjoy special protections under the law and his employer was under no obligation to advise him on that point.” The dissent’s argument regarding the effect of the Terms of Employment and Icicle’s Employment Brochure ignores the reality that Huseman did not rely on or reference these documents. Recognizing that we review the district court’s equitable estoppel determination for abuse of discretion, we affirm the district court.
III. Wards of the Court Doctrine
Huseman attempts to bolster his arguments as to equitable tolling and equitable estoppel by arguing that the court should take into consideration his special status as a seaman and a “ward of the court.” This argument is unavailing because the “wards of the court” doctrine, while extending special protections to seamen under certain circumstances, does not impose a fiduciary duty on ship owners to serve as legal advisors to their employees, requiring them to provide unsolicited explanation of the availability of federal claims.
The “wards of the court” doctrine was created to account for the “special circumstances attending[the seaman’s] calling,” because the “seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman.” Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 430-31, 59 S.Ct. 262, 83 L.Ed. 265 (1939). “The physical conditions under which the seaman labors are extremely hazardous.” Cal. Home Brands, Inc. v. Ferreira, 871 F.2d 830, 837 (9th Cir.1989).
Invocation of the “wards of the court” doctrine is to be linked to the specific policy reasons for its creation. For example, in Socony, the Court declined to apply the common law rule of assumption of risk, and instead used the rule of comparative negligence, because it recognized that seamen are often in the unusual position of having to make quick decisions under hazardous circumstances using whatever equipment they are given. See 305 U.S. at 431-32, 59 S.Ct. 262.
For similar policy reasons, courts have applied the “wards of the court” doctrine in construing seamen’s contracts, particularly when they involve the release of rights. “Notably, we reserve our highest scrutiny for agreements under which a seaman releases the vessel owner of liability because of the understandable concern that such releases may leave the seamen devoid of legal redress.” Thorman v. Am. Seafoods Co., 421 F.3d 1090, 1096 (9th Cir.2005). This approach accounts for the typical inequality of bargaining power between seamen and ship owner:
The analogy ... between seamen’s contracts and those of fiduciaries and beneficiaries remains, under the prevailing rule treating seamen as wards of admiralty, a close one. Whether the transaction under consideration is a contract, sale, or gift between guardian and ward or between trustee and cestui, the burden of proving its validity is on the fiduciary. He must affirmatively show that no advantage has been taken; and his burden is particularly heavy where there has been inadequacy of consideration.
*1125 The wardship theory has, as was recognized by the courts below, marked consequence on the treatment given seamen’s releases. Such releases are subject to careful scrutiny. “One who claims that a seaman has signed away his rights to what in law is due him must be prepared to take the burden of sustaining the release as fairly made with and fully comprehended by the seaman.”
Garrett v. Moore-McCormack Co., 317 U.S. 239, 247-48, 63 S.Ct. 246, 87 L.Ed. 239 (1942) (quoting Harmon v. United States, 59 F.2d 372, 373 (5th Cir.1932)).
For purposes of this appeal, Huseman acknowledges that the paragraph explaining benefits in the Terms of Employment is not a contractual release of his rights. Nor could the Terms of Employment be construed as any kind of waiver or release of rights. Neither are there any colorable claims that the Terms of Employment are invalid or that Icicle has taken advantage of Huseman. Thus, the special scrutiny typically reserved for release of rights in seaman’s contracts cannot be extended to the circumstances here. See Thorman v. Am. Seafoods Co., 421 F.3d at 1096 (reserving the highest scrutiny for contracts in which seaman relinquish their rights); Orsini v. O/S Seabrooke O.N., 247 F.3d 953, 958-59 (9th Cir.2001) (applying the “wards of the court” doctrine to a contract in which a seaman released his rights).
Neither does the “wards of the court” doctrine create a general fiduciary duty to inform Huseman of all his potential federal causes of action. In Thorman, a seaman wage calculation case, we rejected an effort to expand the “wards of the court” doctrine “to encompass a full-blown fiduciary relationship” that would “envelop aspects of the seaman-vessel owner relationship far beyond the release context.” 421 F.3d at 1097. The seaman argued that vessel owners had an affirmative duty to explain their precise compensation methodology or to disclose their financial calculations. Id. at 1098. We disagreed, holding that “[djespite a long line of cases that describe seamen as ‘wards of the court’ needing special protections from potentially overreaching ship owners, the scope of these special protections is not unlimited and nothing supports Thorman’s effort to invoke a fiduciary duty that requires American Seafoods to disclose its specific pricing methodology.” Id. at 1096 (citations and internal quotation marks omitted).
This is a ease of a plaintiff waiting too long to file suit. There is no overreaching ship owner taking advantage of an isolated seaman. Huseman offers no specific evidence that he was misled, either by the Terms of Employment or by Icicle’s conduct. He had ample opportunity to inquire about the possibility of federal benefits and even about federal maritime causes of action, such as Jones Act and unseaworthiness claims. Following Thor-man, we decline to impose a general, all-encompassing fiduciary duty on ship owners to inform seamen of all potential federal claims and benefits and the process for securing them when the employee fails to make even a threshold inquiry.
IV. Laches
 Laches is an equitable affirmative defense available for actions that do not have a specific applicable statute of limitations, such as Huseman’s maintenance and cure claim. See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir.2002). “[T]he appropriate standard of review of a determination of whether laches applies in a particular case is abuse of discretion.” In re Beaty, 306 F.3d 914, 921 (9th Cir.2002).
*1126 “The affirmative defense of laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.” In re Beaty, 306 F.3d at 926-27 (internal quotation marks omitted); see also Jarrow Formulas, 304 F.3d at 838.
Although courts often have presumed that laches is applicable in a suit filed beyond the analogous state limitations period, the presumption is weak. In the laches analysis, the statute of limitations is not given decisive weight. Espino v. Ocean Cargo Line, Ltd., 382 F.2d 67, 68 (9th Cir.1967). “[N]o arbitrary or fixed period of time has been, or will be, established as an inflexible rule....” In re Beaty, 306 F.3d at 927 (citation omitted). There must be “particularized evidence to support [the] assertion that the time lag between knowledge of the potential action and the filing of the action was unreasonable in length. Mere delay alone will not establish laches.... ” See id.
Regardless of the applicable analogous statute of limitations, Icicle still has the burden of proving prejudice from the delay. Id. As we emphasized in Jarrow Formulas, even for lawsuits filed beyond the analogous statutory period, “the party asserting laches ... must show that (l)[plaintiffs] delay in filing suit was unreasonable, and (2) [defendant] would suffer prejudice caused by the delay if the suit were to continue.” 304 F.3d at 838.
Huseman filed suit less than one month after learning of his remedies and just under six months beyond the three-year statute of limitations.[1] It is mere speculation that this brief delay was unreasonable. Although he may not have been diligent vis-a-vis a strict statute of limitations, he did pursue his federal claims very quickly once he consulted an attorney. Because any presumption predicated on the statute of limitations is necessarily weak, diligence is to be assessed in the context of a claim that has no specific statute of limitations and is intended to provide coverage for the seaman.
Huseman’s short delay must be balanced against specific findings of prejudice that would be suffered by Icicle if the maintenance and cure claim were to proceed. See Espino, 382 F.2d at 70 (remanding to the district court for specific factual findings as to any prejudice the defendant may have suffered in light of the “slight delay” of three months beyond the statute of limitations, and for a holding as to whether it would be inequitable to enforce the claim after balancing the prejudice and the justification for the delay). The most important aspect of a laches determination is whether Icicle has truly *1127 been prejudiced by the five and one-half month delay; “laches is not a doctrine concerned solely with timing. Rather, it is primarily concerned with prejudice.” In re Beaty, 306 F.3d at 924.
Significantly, the district court made no specific findings of prejudice; instead, it articulated a rationale for why the delay was unreasonable — Huseman’s ignorance of the law and failure to make inquiry— and simply made the conclusory statement, with no elaboration, that the delay “has prejudiced [Icicle].” This generic statement, made without reference to any specific factual findings or determination of prejudice, cannot support a dismissal based on laches.
Icicle had ample incentive to investigate Huseman’s accident thoroughly, knowing that Huseman could “request at any time to opt out of the Alaska Worker’s Compensation System in favor of Federal benefits.” Icicle also had an interest in investigating the accident to prevent similar injuries to other employees. The availability of witnesses and their ability to recollect is unlikely to have changed considerably in the five month period after the presumptive three-year limitations period expired and before Huseman filed suit. Under Espino, the district court must determine on remand whether the fact that Huseman filed suit forty-one and one half months, rather than thirty-six months, after his injury seriously prejudiced Icicle.
AFFIRMED as to the Jones Act and unseaworthiness claims; REVERSED and REMANDED as to the maintenance and cure claim.

. Huseman alleges that the appropriate period is a "six-year contract statute of limitations,” but he does not specify a jurisdiction. According to the record, Huseman is a citizen of Oregon, he was injured in Alaska, and Icicle is located in Seattle, Washington. The district court passed on deciding the applicable limitations period, and the record is not developed as to what jurisdiction would govern any potential contractual claim by Huse-man, or whether the Terms of Employment are a contract. We therefore do not decide what limitations period applies. For the purposes of this opinion, we assume that Alaska law governs, and note that the statute of limitations is three years, whether the maintenance and cure claim is classified as a maritime tort or as a contract claim. See 46 App. U.S.C. § 763a; Usher v. M/V Ocean Wave, 27 F.3d 370, 371-72 (9th Cir.1994) ("The language and legislative history of Section 763a indicate Congress intended the three-year limitations period established by that section to apply to all maritime personal injury claims .... [and] all maritime torts.”) (quoting Friel v. Cessna Aircraft Co., 751 F.2d 1037, 1038 (9th Cir.1985) (emphasis in original)) (per cu-riam); Alaska Stat. § 09.10.053 (1997) (setting a three-year statute of limitations for contract claims).