FILED

JUN 12 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              ) BAP Nos. EC-14-1195-PaJuKu
                                    )           EC-14-1273-PaJuKu
CWS ENTERPRISES, INC.,              )           (consolidated)[1]
                                    )
            Debtor.                 ) Bankr. No. 09-26849
_____ )
                                    )
CHARLES W. SILLER,                  )
                                    )
            Appellant,              )
                                    )
v.                                  ) **M E M O R A N D U M**[2]
                                    )
BIG HILL LOGGING AND ROAD           )
BUILDING COMPANY, INC.,             )
                                    )
            Appellee.               )
_____ )

Argued and Submitted on May 14, 2015
at Sacramento, California

Filed - June 12, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Chief Bankruptcy Judge, Presiding

Appearances:     Randy E. Michelson of Michelson Law Group argued
                 for appellant Charles W. Siller; Jeremy Luke
                 Hendrix of Desmond, Nolan, Livaich & Cunningham
                 argued for appellee Big Hill Logging and Road
                 Building Company, Inc.

Before: PAPPAS, JURY, and KURTZ, Bankruptcy Judges.

---

[1] These appeals, involving the same parties, issues and order on appeal, were consolidated by the Panel in an order entered on June 13, 2014.

[2] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Charles W. Siller ("Charles")[3] appeals the bankruptcy court's order allowing a claim for an administrative expenses for creditor Big Hill Logging and Road Building Company, Inc. ("Big Hill") in the chapter 11[4] case of CWS Enterprises, Inc. ("Debtor"). We AFFIRM.

## I. FACTS

### The Parties

Debtor owned the 180-acre parcel of land in Oroville, California, that is the focus of this dispute ("the Property"). Charles owns 100 percent of the stock in Debtor and is its executive officer.

The other party in this dispute is Big Hill, a corporation involved in logging, road building, and forestry. Dane Siller ("Dane") and his father, Mac Siller ("Mac"), are the principals of Big Hill. Dane is the nephew, and Mac is the brother of Charles.

### The Courtesy Notice

Before Debtor owned the Property, it was the site of a mining and dredging operation. Before and after Debtor acquired the Property, "illegal dwellings," consisting primarily of tarps and lean-tos used by transient and homeless people, littered the Property. As a result of the dredging operation, there were also large piles of tailings on the Property, ranging from ten to thirty feet high, overgrown with vegetation. There were also

---

[3] Some of the parties in these appeals are family members with the same surname. For clarity, we refer to them by their first names. No disrespect is intended.

[4] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

large areas of standing water and ponds on the Property that would impede police and emergency service workers' access to the Property.

In February 2009, the City of Oroville, CA ("City") issued a Courtesy Notice to Debtor citing several code violations constituting nuisances and dangers to public safety on the Property. The Courtesy Notice warned Debtor that "to avoid further code enforcement action," it must promptly correct the violations.

Charles engaged Big Hill to perform cleanup operations in response to the Courtesy Notice. Between February 7 and May 4, 2009, Big Hill's crews cleared the Property by removing the dwellings and associated trash; reducing the height of the tailings by spreading them out over fifty acres of the Property; removing the vegetation; and filling ponds. The Big Hill charges for these services totaled $91,864.

## The Bankruptcy Case

On April 10, 2009, following the entry of a money judgment against it in favor of a creditor, Debtor filed a petition for relief under chapter 11. In June 2009, at the request of Debtor's two largest creditors and the U.S. Trustee, the bankruptcy court appointed a chapter 11 trustee, David D. Flemmer ("Flemmer"), to serve in the bankruptcy case. Thereafter, Flemmer and Debtor cooperated to obtain confirmation of Debtor's Third Amended Plan of Reorganization on April 16, 2012 (the "Plan"), with an effective date of May 1, 2012. Flemmer became Plan Administrator under the Plan; he paid all administrative expense claims that had been approved by the bankruptcy court as of the effective date,

-3-

all undisputed prepetition claims, and the allowed portion of the one disputed claim.[5] The Plan provided for the payment of all administrative expense claims, but did not set a cutoff date for filing those claims.

Flemmer filed a motion on December 19, 2013, for an order approving his proposal to pay Big Hill's May 4, 2009[6] invoice for $91,865 in full, as a contractual obligation of Debtor's bankruptcy estate (the "Contract Motion").[7] Charles opposed the Contract Motion[8] because Big Hill had not filed a proof of claim. The bankruptcy court conducted an evidentiary hearing on the Contract Motion on January 29, 2014. Dane, Charles, and Flemmer appeared.

The bankruptcy court denied the Contract Motion because,

---

[5] The bankruptcy court allowed the disputed prepetition claim of a creditor, Spiller McProud, only in part. The court's ruling on this claim was apparently appealed to the U.S. District Court, but the record does not indicate the outcome of that appeal. Regardless, the bankruptcy court found that the Plan Administrator had sufficient funds to pay the Big Hill claim in dispute here, as well as the Spiller McProud claim in full.

[6] There is no indication in the record when this invoice was actually sent to Flemmer.

[7] Flemmer also sought permission in the motion to pay Big Hill $3,431.31 for four replacement tires. The bankruptcy court denied this request, and its decision is not implicated in these appeals.

[8] Charles' standing to oppose the Contract Motion, or in this appeal, has not been challenged. It is undisputed that all of Debtors' undisputed unsecured creditors have been paid, and an allowance has been made for the one disputed unsecured claim. Charles owns 100 percent of the equity in Debtor, and in the words of the bankruptcy court, "all of the claims that get paid come out of [Charles] Siller's hide[.]" Hr'g Tr. 62:8-9, January 29, 2014. A party who is potentially injured by the payment of a claim has standing to oppose allowance of the claim. Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 777-79 (9th Cir. 1999).

-4-

first, the Plan had rejected all prebankruptcy executory contracts, including the agreement between Debtor and Big Hill, and second, because Big Hill's proof of claim was submitted long after the claims bar date for prepetition claims. In reaching these conclusions, however, the court expressly refrained from considering whether any other legal basis existed to pay Big Hill's invoice. Significantly, in its oral decision, the bankruptcy court observed that, based on its review of the record, and considering the weather conditions, between 50 and 80 percent of the work represented in the invoice was likely performed by Big Hill after the filing of the chapter 11 petition.[9]

After the denial of the Contract Motion, Big Hill submitted an Amended Proof of Claim asserting an administrative expense for $76,923.31, representing 80 percent of its total original invoice. Big Hill then filed a motion for allowance of this amount as an administrative expense claim on February 12, 2014. Charles again opposed, arguing that Big Hill's claim did not arise from a transaction with the debtor in possession; that the claim, if any, was discharged in the confirmed plan; and that Big Hill had not demonstrated excusable neglect in failing to timely file the claim.

The initial hearing on Big Hill's motion took place on March 26, 2014. After hearing arguments of counsel, the

---

[9] The court stated:

I am persuaded that about 80% of the work was done post-petition. . . . It might have been more than 20% was done beforehand but certainly not more than half, so at least half of the work was done post-petition.

Hr'g Tr. 63:16—64:1, January 29, 2014.

-5-

bankruptcy court determined that an evidentiary hearing was required, because there were disputed factual issues; the court also directed the parties to consider whether restitution principles should be applied in resolving the issues.

A second, evidentiary, hearing occurred on April 7, 2014. Charles, Big Hill, and Flemmer were represented by counsel. The bankruptcy court heard testimony from Charles and Dane. The court also admitted into evidence two declarations from Dane and the declaration of Flemmer. Of significance to the court was Charles' Exhibit 3, a two-page report from the Western Regional Climate Center, National Oceanic and Atmospheric Administration, detailing rainfall in the Oroville area for February thru May, 2009.

At the close of arguments, the bankruptcy court announced its extensive findings of fact and conclusions of law. They included the following:

- With one exception, the court adopted the findings of fact and conclusions of law it had made after the evidentiary hearing on January 29, 2014.

- The court observed that the new evidence regarding the rainfall amounts caused it to change its earlier allocation of the work performed by Big Hill before and after the petition was filed. Based on the new evidence, the bankruptcy court now found that 50 percent, not 50-80 percent, of the Big Hill services were rendered during the bankruptcy case.

- The court reasoned that, under California law, and the general principles of the law of restitution, Big Hill had established an allowable claim for the services performed post-petition, and that under the Ninth Circuit case law, this claim

-6-

should be allowed as an administrative expense in the bankruptcy case.

The bankruptcy court entered an order approving Big Hill's administrative expense claim for $45,912.50 (i.e., 50 percent of the invoice amount) on April 8, 2014. Charles filed a timely appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court abused its discretion in allowing Big Hill's administrative expense claim.

## IV. STANDARD OF REVIEW

We review a bankruptcy court's order allowing or disallowing an administrative claim for abuse of discretion. Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.), 294 B.R. 306, 309 (9th Cir. BAP 2003) (citing Teamsters Indus. Sec. Fund v. World Sales, Inc. (In re World Sales, Inc.), 183 B.R. 872, 875 (9th Cir. BAP 1995)). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support from evidence in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). The bankruptcy court's factual findings related to administrative claims are reviewed for clear error. Einstein/Noah Bagel Corp. v Smith (In re BCE W. L.P.), 319 F.3d 1166, 1172 (9th Cir. 2003).

Whether a claim for restitution is barred by the doctrine of

laches is reviewed for abuse of discretion. Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1125 (9th Cir. 2006).

## V.  DISCUSSION

### A.  The bankruptcy court did not abuse its discretion in allowing an administrative expense to Big Hill for $45,912.50.

Section 507(a)(2) accords the administrative expenses of a bankruptcy estate second priority among claims for payment in a bankruptcy case.  Administrative expenses are given priority to encourage creditors to provide goods and services to a chapter 11 debtor or trustee that are necessary for the orderly administration of the estate.  Christian Life Ctr. Litig. Def. Comm. v. Silva (In re Christian Life Ctr.), 821 F.2d 1370, 1373 (9th Cir. 1987); In re Palau, 139 B.R. 942, 944 (9th Cir. BAP 1992).

Section 503(b)(1)(A) identifies the claims that may be allowed as administrative expenses, "including . . . the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]"  In re Metro Fulfillment, Inc., 294 B.R. at 309.  Ordinarily, the terms "actual" and "necessary" as used in § 503(b)(1)(A) are construed narrowly.  Id.  This strict construction implements a presumption that a bankruptcy estate  has limited resources which should be equally distributed among creditors.  Boeing N. Am., Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018, 1026 (9th Cir. 2005) (citing Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.), 258 F.3d 385, 389 (5th Cir. 2001)) (explaining that "[t]he central question in determining whether a claim is granted administrative

expense priority is whether the third party should be paid at the expense of the debtor's existing unsecured creditors."). However, the Ninth Circuit has instructed that, in deciding whether to allow an administrative expense, the bankruptcy court may exercise "broad discretion." Microsoft Corp. v. DAK Indus. (In re DAK Indus.), 66 F.3d 1091, 1094 (9th Cir. 1995); In re Dant & Russell, Inc., 853 F.2d at 706.

The burden of establishing an allowed administrative expense claim is on the claimant by a preponderance of the evidence. Gull Indus. v. John Mitchell, Inc. (In re Hanna), 168 B.R. 386, 388 (9th Cir. BAP 1994). In this Circuit, to be allowed, a claimant must show that the debt asserted to be an administrative expense:

> (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate.

In re DAK Indus., 66 F.3d at 1094); see also Abercrombie v. Hayden Corp. (In re Abercrombie), 139 F.3d 755,757 (9th Cir. 1998) (quoting In re DAK Indus.).[10]

Debtor filed the chapter 11 petition on April 10, 2009. A chapter 11 trustee was not appointed until June 19, 2009. Thus, between April 10 and June 19, Debtor was a debtor in possession under the Bankruptcy Code. § 1108 (providing that "the trustee" may operate the debtor's business); § 1107(a) (providing that,

---

[10] In his briefs, Charles misquotes both In re DAK Indus. and In re Abercrombie by deleting the critical phrase, "(or, alternatively, that the claimant gave consideration to the debtor-in-possession)".

-9-

unless the court orders otherwise, the debtor shall have all rights of a trustee in a chapter 11 case). It is not disputed that Charles was the executive officer and responsible person for Debtor while it served as debtor in possession, and that he was clothed with authority to make decisions for Debtor. Thus, decisions made by Charles from April 10 to May 4, 2009, regarding the Property, constitute actions by Debtor as the debtor in possession.

There is evidence in the record that Charles induced Big Hill to provide the clearing and other services on the Property from April 10 to May 4, 2009. As Dane testified,

Q:      This is the work [Charles] asked you to perform when?

Dane:   He asked me to start the work after the city had given permission in February. But when we got done dealing with the city, the west side of 7th avenue was not within the city's scope. But he wanted us to do that since we were there already. . . .

Q:      When did [Charles] ask you to perform that work?

Dane:   After the city area was satisfied.

Q:      Was that before or after CWS filed bankruptcy?

Dane:   Post-Petition.

Q:      After bankruptcy?

A:      After.

Hr'g Tr. 28:20—29:11, April 7, 2014.

Based upon this testimony and the other evidence, the bankruptcy court found that:

Certain potential fines . . . were anticipated with respect . . . to the portion of the Property that was located within the control of the City, and that was not

-10-

> threatened with respect to the adjacent property that was not under the control of the City. I conclude that the decision was made by Charles Siller to just take care of the whole situation all at once and get the old mine dredge tailings leveled out, eliminate the ponds on the Property, get rid of the vegetation that was causing problems.

Hr'g Tr. 73:25—74:10.

The bankruptcy court found, on the basis of evidence presented at the hearing, that work was done by Big Hill both before and after the bankruptcy case was commenced. There is considerable evidence that Charles and Dane made a minimum of three visits to the Property together between April 10 and May 4, observing and discussing the ongoing work, including the work on the non-City sections of the Property that were not included in the original contract.

Moreover, even if it could be argued that there was no actual agreement struck between Debtor and Big Hill to perform post-bankruptcy services for Debtor, Charles cannot persuasively dispute that Big Hill provided sufficient consideration to Debtor as a debtor in possession to support an administrative expense claim. Such consideration may consist of the provision of services. In re Abercrombie, 139 F.3d at 757. Again, it is not disputed that Big Hill performed services post-petition that it was not obligated to provide by contract (insofar as the contract had been rejected in the chapter 11 case as of the petition date). It is the consensus of authority that when third parties are induced to supply goods or services to a debtor in possession, their claims should be accorded administrative expense status. Id.; In re DAK Indus., 66 F.3d at 1094; In re Jartran, 732 F.2d 584, 587 (7th Cir. 1984); In re Mammoth Mart, Inc., 536 F.2d at

-11-

954.

On this record, we conclude that the first criterion for an administrative expense set forth in In re DAK Indus. has been satisfied. There is ample evidence in the record that during the bankruptcy case, Charles, acting on behalf of Debtor as the debtor in possession, induced Big Hill to continue work on the Property, and then accepted consideration from Big Hill in the form of services provided post-petition.

The second In re DAK Indus. criterion is also established by this record, in that Big Hill's services "directly and substantially benefitted the estate." The Courtesy Notice advised Debtor that there were nuisance conditions on the Property that must be promptly addressed or code enforcement actions might ensue. In response, Debtor, through Charles, elected to engage Big Hill to remedy the nuisances described in the Courtesy Notice. Failure by Debtor to comply could have resulted in fines and other expenses to the estate. The bankruptcy court's conclusion that Big Hill's services were beneficial to Debtor was a sound one.[11]

Finally, we consider whether the bankruptcy court erred in allowing 50 percent of the Big Hill invoice amount as the amount of the administrative expenses. Based upon the uncontradicted evidence in the first hearing, the court determined that as much as 80 percent, but no less than 50 percent, of the work performed by Dane on the Property occurred post-petition. Then, in the second hearing, the bankruptcy court accepted additional evidence

_____

[11] To the extent that the invoice may have included services performed on the adjacent land and not subject to the Courtesy Notice, it is still likely that the services benefitted the estate by removing hazardous conditions on the adjacent land.

-12-

on rainfall patterns in the post-petition period, noting: "I am going to reopen the evidentiary record from the prior hearing because it's a subsequent motion."[12]  Hr'g Tr. 9:10-20, April 7, 2014.

Of course, it was not error for the bankruptcy court to take this approach, since the second evidentiary hearing involved a different motion than was before the court in the first evidentiary hearing.  But even if the hearing on the motion for allowance of the administrative expense claim were somehow viewed as a continuation of the proceedings concerning the Contract Motion, the bankruptcy court did not abuse its discretion in "reopening" the evidentiary record.  Keith v. Volpe, 858 F.2d 467, 478 (9th Cir. 1988) (court may sua sponte reopen the evidentiary record after trial and before judgment); Students of Cal. School for the Blind v. Honig, 736 F.2d 538, 540 (9th Cir. 1984), vacated and remanded on other grounds, 471 U.S. 148 (1985) (noting that reopening evidence is within the discretion of the trial court

---

[12]  Charles objected to what he considered to be a "reopening" of the evidentiary record.  The bankruptcy court, sensitive to creating an adequate record, responded:

> . . . I think it's a practical matter to do that.  I have enough discretion to do that.  And the reason — when I resolve this matter, I want to make findings of fact and conclusions of law; and if that means the appellate review, which I assume will occur, will be based on [] what I have right now.  If I rule right now, we have appellate looking at a summary, saying a statement might lead to this and that and, Judge, we think you might want to try that.  I want to eliminate that possibility and make sure we've nailed down everything.
>
> I have all of my notes from the prior testimony.  I have the transcript.

Hr'g Tr. 8:9-23, April 7, 2014.

-13-

where new evidence should both be important as a matter preventing injustice and reasonably available).

At the first hearing concerning the Contract Motion, the bankruptcy court based its decision on Dane's uncontradicted, but poorly supported, testimony about how rainfall affected the work on the Property.  In contrast, at the second hearing concerning the administrative expense claim, the bankruptcy court was given a government report on rainfall patterns and amounts from the Western Regional Climate Center, National Oceanic and Atmospheric Administration, Exhibit 3.[13]  Based upon this new evidence, the court revised its estimate of the work performed both pre- and post-petition, to reach what it decided was a more accurate estimate of the allocation.  As this was a disputed issue of fact, and there were two permissible views of the evidence on this issue, the fact finder's choice between them cannot be clearly erroneous.  Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 1985).[14]

_____

[13]  The bankruptcy court admitted this report as a self-authenticating government document under Fed. R. Evid. 901(7) and 803(8).

[14]  As discussed above, Charles argues in this appeal that the bankruptcy court abused its discretion because it should have treated Big Hill's motion for administrative expense claim as a reconsideration motion of the court's decision on the Contract Motion.  The bankruptcy court noted that there were some similarities between the administrative expense motion and the Contract Motion, observing that whether it was a motion for an administrative expense claim or a reconsideration of the Contract Motion was a "debatable point."  Hr'g Tr. 10:16-20, July 7, 2014.  However, it also correctly noted that the parties were different and the relief requested was different.  Indeed, in ruling on the Contract Motion, the bankruptcy court expressly declined to speculate whether Big Hill might have other rights to relief based upon its status as something other than a prebankruptcy creditor.
(continued...)

-14-

**B. The bankruptcy court did not abuse its discretion in supporting its award of an administrative claim to Big Hill on a theory of restitution.**

The bankruptcy court had held that Big Hill's original contract with Debtor to perform services was rejected by confirmation of the chapter 11 plan. However, the bankruptcy court invited the parties to address the implications of the Restatement (Third) of Restitution and Unjust Enrichment and California case law as a possible basis for allowing an administrative expense claim for the post-bankruptcy work of Big Hill. After the evidentiary hearing, the court then found that restitution principles indeed supported such an award.

The Restatement (Third) of Restitution § 1 provides that, " A person who is unjustly enriched at the expense of another is subject to liability in restitution." Relying on either this or earlier, nearly identical editions of the Restatement, California courts have recognized that unjust enrichment may require restitution. Ghirardo v. Antonioli, 14 Cal. 4th 39, 51 (1996) ("Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another. A person is unjustly enriched if he receives a benefit at another's expense."); Hirsch v. Bank of Am., 107 Cal. App. 4th 708, 721-22 (2003); Dunkin v. Boskey, 82 Cal. App. 4th 171, 195 (2000); First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657,

[14](...continued)
The court indicated that it had made a choice in the manner in which it was treating the two motions: "It's fundamentally in my discretion and I want to make sure that I'm making a fair determination." Hr'g Tr. 11:1-8, July 7, 2014. The court did not abuse its discretion in not treating the administrative expense motion as a request for reconsideration of its decision concerning the Contract Motion.

-15-

1662 (1992). Notably, "a benefit conferred is not only when one adds to the property of another, but also when one saves the other from expense or loss." Ghirardo, 14 Cal. 4th at 51. These equitable principles are consistent with the cases discussed above that instruct the bankruptcy court to allow administrative priority to claimants who provide post-petition consideration to a debtor in possession, or who are induced to provide services to the debtor in possession. In re Abercrombie, 139 F.3d at 757; In re DAK Indus., 66 F.3d at 1094; In re Jartran, 732 F.2d at 587; In re Mammoth Mart, Inc., 536 F.2d at 954. We agree with the bankruptcy court that the restitution principles articulated and adopted in the California case law support the bankruptcy court's decision to allow an administrative expense.[15]

Finally, we address Charles' argument that the doctrine of laches barred allowance of Big Hill's claim. Charles argues that because Big Hill delayed five years in filing its proof of claim in the bankruptcy case, that Charles, an 87-year old man, was prejudiced. But the bankruptcy court disagreed that prejudice had been shown.

Assuming without deciding that laches can constitute a

---

[15] Charles argues that the bankruptcy court erred in including in its restitution comments about Cal. Code Civ. Proc. § 871.1(a). That statute provides: "As used in this chapter, 'good faith improver' means [a] person who makes an improvement to land in good faith and under the erroneous belief, because of a mistake of law or fact, that he is the owner of the land." Of course, since it is undisputed that Debtor, not Big Hill, owned the Property, this provision does not strictly apply in this case. But that the statute does not cover these facts is of no moment because the bankruptcy court did not rely upon it. Rather, the court explained that, in reaching its decision, the statute and related cases "informs the [court's] analysis of what is a legitimate administrative expense in this case." Hr'g Tr. 73:19-22. We find no error in the court's observation.

-16-

defense to Big Hill's claim under these circumstances, application of the doctrine requires proof by Charles of (1) a lack of diligence by Big Hill, and (2) resulting prejudice to Charles. Huseman, 471 F.3d at 1126. Both elements must be proven by preponderance of the evidence. Id. Of the two elements, the more important is prejudice. Beaty v. Selinger (In re Beaty), 306 F.3d 914, 924 (9th Cir. 2002) ("[L]aches is not a doctrine concerned solely with timing. Rather, it is primarily concerned with prejudice.").

The bankruptcy court found after hearing testimony from Dane and Charles that Charles and Debtor were not prejudiced by the delay in submitting the administrative claim:

> If this had been presented earlier, like in 2009, [Charles] would have been 82 years old, and that memories have faded in the ensuing years. . . . I am not satisfied that providing some sort of remedy would be unfairly prejudicial to CWS Enterprises and to Charles Siller who controls CWS Enterprises.

Hr'g Tr. 76:15-21, ER at 511. Although the bankruptcy court did not discuss Big Hill's diligence in asserting its claim, laches requires proof of both elements. The court's finding that Charles and Debtor suffered no prejudice from any delay in submitting the claim was not clearly erroneous. As a result, the bankruptcy court did not abuse its discretion in declining to disallow Big Hill's claim based upon laches under the circumstances of this case.

## VI. CONCLUSION

We AFFIRM the order of the bankruptcy court.

-17-